```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF PUERTO RICO
```

UNITED STATES OF AMERICA,

    **Plaintiff**,

    v.                                **CRIMINAL NO. 22-452 (RAM)**

[1] ESTEFANI VÁZQUEZ-AMARANTE,

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court on the *United States' Urgent Request for Staying Magistrate Judge's Order Releasing the Defendant and Appeal of Release Order* ("*Urgent Motion*") and Defendant Estefani Vazquez-Amarante's ("Mr. Vázquez-Amarante" or "Defendant") *Reconsideration of Stay Order and Opposition to Government's Motion for De Novo Review*. (Docket Nos. 49 and 52).

Having heard both parties at a *De Novo* hearing held on February 2, 2026, the Court **DENIES** the United States's *Urgent Motion*. Defendant shall be released pursuant to the Magistrate Judge's Order at Docket No. 44 and subject to the conditions therein.

### I. BACKGROUND

On October 10, 2022, a Grand Jury returned an *Indictment* charging Mr. Vázquez-Amarante with two counts of international

distribution of five (5) kilograms or more of cocaine in violation of 21 U.S.C. §§ 959(a), 960, 963 and 18 U.S.C. § 2, and one count of conspiracy to commit money laundering derived from specified unlawful activity in violation of 18 U.S.C. § 1956(h). (Docket No. 3).

On September 7, 2023, a Grand Jury subsequently returned a *Superseding Indictment* charging the same offenses with amendments that are not relevant to the issue before the court. (Docket No. 10).

On January 27, 2026, Defendant appeared before Magistrate Judge Héctor Ramos-Vega for an Arraignment and Detention Hearing. (Docket No. 43). The Government moved for detention. The Magistrate heard the parties and took the matter under advisement. Id.

Also on January 27, 2026, and while the *Pretrial Services Report* recommended detention, the Magistrate found that there were conditions of release that would reasonably assure the appearance of the Defendant and the safety of the community. In addition to the standard conditions of release, the Magistrate Judge imposed the following conditions: a $10,000 unsecured bond; electronic monitoring under the home incarceration modality; Defendant must reside with his mother; and Defendant must surrender his passport. (Docket No. 43).

On January 29, 2026, the Government filed its *Urgent Motion.* (Docket No. 49). The Government requested a stay of the order

alleging that the offenses charged triggered a presumption against finding conditions of release and that Defendant is a danger to the community and a risk of flight. Id. Specifically, the Government posited that Defendant is a citizen and resident of the Dominican Republic with extensive ties and property there and with no legal status in the United States. Id. at 3. The Government also maintained that Mr. Vázquez-Amarante lived in the Dominican Republic since 2020 until his extradition in 2026, that he has siblings, a wife, and a daughter there, and that he owns property there. Id. The Government further alluded to the evidence against Defendant and alleged he had access to vast illicit financial resources. Id. at 4. The Government claimed that the nature of Defendant's life outside of the United States, his access to financial resources, and his exposure to a statutory sentence of 10 years to life give Mr. Vázquez-Amarante incentive to flee. Id.

Also on January 29, 2026, the Court issued an order staying the *Order of Release* because it found that "[t]he Government has made a showing of likelihood of success on the merits and of risk of flight if the order of release is not stayed." (Docket No. 50). Moreover, the Court also found that "the public interest also favors a brief stay." Id.; *See* Nken v. Holder, 556 U.S. 418 (2009). The Court set the *De Novo* hearing on detention or release for February 4, 2026. Id.

On that same day, Defendant filed a trifecta of motions comprised of a motion requesting a copy of the audio of the detention hearing, the *Motion for Reconsideration, and* a motion to advance the *De Novo* hearing. (Docket Nos. 52-55). In his *Motion for Reconsideration*, Mr. Vázquez-Amarante maintained that any potential risk of flight is mitigated by the fact that he voluntarily surrendered to Dominican Republic authorities for extradition to the United States. (Docket No. 52 at 3). Moreover, Defendant alleged strong family ties to the community because his mother has resided in Puerto Rico for many years. Id. at 11. Mr. Vázquez-Amarante also maintained that he has no criminal record and that the Government has made no showing that he is a risk to the community. Id. Finally, Defendant posited that the conditions set by the Magistrate Judge reasonably assure the safety of the community and his appearance. Id. at 12-13.

The Court advanced the *De Novo* hearing to February 2, 2026. (Docket No. 55). At the *De Novo* hearing, the Government proceeded by proffer and moved for detention on risk of flight and dangerousness grounds. But its proffer focused on the former and shed no light on the latter.

## II. LEGAL STANDARD

**A. Standard of review for a detention or release order**.

District courts review a magistrate judge's order of detention or release under a *de novo* standard and "need not defer

to the magistrate judge's findings or give specific reasons for rejecting them." United States v. Cidraz-Santiago, 18 F. Supp. 3d 124, 126 (D.P.R. 2014) (citations omitted). A district court may also "take additional evidence or conduct a new evidentiary hearing" when "the defendant has placed relevant facts at issue." Id.

### B. The Bail Reform Act

Pursuant to the Bail Reform Act of 1984, a judicial officer must determine whether a person charged with an offense shall be detained or released pending trial. *See* 18 U.S.C. § 3142(a). Section 3142(e) of the Bail Reform Act provides that if, after conducting a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." Id. § 3142(e).

    i.   Standard of proof

The standard of proof for detention on the grounds of dangerousness is **clear and convincing evidence**. Id. § 3142(f). Clear and convincing evidence is "more than preponderance of the evidence but less than beyond a reasonable doubt." United States v. Acevedo-Ramos, 600 F. Supp. 501, 509 (D.P.R. 1984) (citations omitted), *aff'd*, United States v. Acevedo-Ramos, 755 F.2d 203 (1st Cir. 1985). This standard requires "a high degree of certainty

that the information presented supports the conclusion of dangerousness or risk to the obstruction of justice." Id. On the other hand, the standard of proof for detention on the grounds of risk of flight is preponderance of the evidence. United States v. Patriarca, 948 F.2d 789, 793 (1st Cir. 1991).

    ii.   Factors the Court must consider

To determine whether there are conditions of release that assure a defendant's appearance and the safety of the community, judicial officers must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's personal history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 4152(g).

    iii.   The 18 U.S.C. § 3142(e) presumption

18 U.S.C. § 3142(e) creates a rebuttable presumption that no conditions can reasonably assure the appearance of the defendant and the safety of the community where there is probable cause that a defendant has committed one of the crimes listed in the statute or in the other circumstances set forth therein. United States v. Vargas-Reyes, 220 F. Supp. 3d 221, 225 (D.P.R. 2016) (citing 18 U.S.C. § 3142(e)(3)). A grand jury indictment alone suffices to trigger the presumption. Id. (citing, *inter alia*, United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986)).

In cases involving drug trafficking crimes, the presumption comes from "Congress's finding that drug traffickers often have the resources and foreign contacts to escape to other countries" and that "[f]orfeiture of even a large bond may be just a cost of doing business, . . . hence drug traffickers pose special flight risks." United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st Cir. 1987); *see also* United States v. Dillon, 938 F.2d 1412, 1416-17 (1st Cir. 1991) (noting appellant-defendant remained a risk of flight where the drug organization "probably could absorb the loss of $200,000 worth of security"); United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1988) (gravity of charges and non-citizen status makes the risk of flight pronounced); United States v. Jessup, 757 F.2d 378, 385 (1st Cir. 1985) (reviewing the evidence before Congress that drug offenders pose particular flight risk), *partially abrogated on other grounds by* United States v. O'Brien, 895 F.2d 810 (1st Cir. 1990).

Once triggered, the 18 U.S.C. § 3142(e)(3) presumption imposes on the defendant a burden of production. *See* Vargas-Reyes, 220 F. Supp. at 225. The defendant may satisfy the burden of production by introducing at least some evidence contrary to the facts presumed. Id. For that reason, "[t]he burden is not heavy." Id. Notably, the burden of persuasion always rests with the Government in both presumption and non-presumption cases. Id.

However, the 18 U.S.C. § 3142(e)(3) presumption does not simply vanish once a defendant has produced some evidence. *See* Palmer-Contreras, 835 F.2d at 18; Jessup, 757 F.2d at 383-84, 387. Instead, judges must keep the presumption in mind as an additional factor to the four listed in Section 3142(g). *See* Palmer-Contreras, 835 F.2d at 18; Jessup, 757 F.2d 383-84, 387. In drug trafficking cases, the weight afforded to the presumption depends on how closely the defendant resembles the paradigmatic drug trafficker for whom the risk is particularly high; "the less those features resemble the congressional paradigm, the less weight the [court] will likely give to Congress's concern for flight." Jessup, 757 F.2d at 387; *see also* Palmer-Contreras, 835 F.2d at 18; Perez-Franco, 839 F.2d at 870.

### III. DISCUSSION

**A. The nature and circumstances of the offense charged.**

Mr. Vázquez was indicted on two counts of drug trafficking offenses. (Docket No. 10). Here, the presumption comes from 18 U.S.C. § 3142(e)(3)(A), *i.e.*, probable cause to believe that Defendant committed "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act[.]" Given the severity of the punishment provided by the relevant statutes, this factor favors detention. However, as the Court will discuss, the remaining factors favor release.

**B. The weight of the evidence against Defendant.**

The weight of the evidence against Defendant appears to be strong. To support the international distribution of cocaine charges, the Government has proffered evidence of a controlled delivery of cocaine to Mr. Vázquez-Amarante. To support the money laundering charges, the Government has proffered evidence of multimillion dollar amounts of cash purportedly delivered to an undercover informant at Defendant's direction.

Regardless of the import or weight of the evidence proffered by the Government, the Court is not concerned with Mr. Vázquez-Amarante's guilt or innocence at this stage. *See* 18 U.S.C. § 3142(j) ("Nothing in this section shall be construed as modifying or limiting the presumption of innocence."). The Court's task is to assess whether there is a set of conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(B). Thus, this factor does not preclude a finding that a set of conditions will reasonably assure the safety of individuals and the community.

**C. Defendant's history and characteristics.**

Defendant's history and characteristics favor release. Mr. Vázquez-Amarante is 48 years old and a citizen and resident of the Dominican Republic. Mr. Vázquez-Amarante lacks a history of

substance abuse and voluntarily submitted to urinalysis which yielded negative results to all drugs tested.

Mr. Vázquez-Amarante has no criminal history in Puerto Rico or elsewhere in the United States. He was previously a legal permanent resident of the United States residing in Puerto Rico. According to the *Pretrial Services Report*, Mr. Vázquez-Amarante asserted he has been residing in the Dominican Republic since 2020. The attorney for the Government corroborated that assertion by proffering that Mr. Vázquez-Amarante left Puerto Rico in 2020 and never re-entered the United States until he was extradited to face prosecution.

Mr. Vázquez-Amarante's alienage, on its own, is not inherently probative of a serious risk of flight nor is it a factor that "tip[s] the balance either for or against detention." United States v. Motamedi, 767 F.2d 1403, 1408 (9th Cir. 1985). Instead, the fundamental question is what ties Mr. Vázquez-Amarante has with the United States in general and with Puerto Rico in particular. When tasked with assessing an alien defendant's ties to the United States, courts should consider the following factors: "how long the defendant has resided in this country, whether defendant has been employed in the United States, whether defendant owns any property in this country, and whether defendant has any relatives who are United States residents or citizens." U.S. v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990).

Mr. Vázquez-Amarante has the following ties to Puerto Rico: his mother and daughter are residents of Puerto Rico. While he appears to have relinquished his legal permanent resident status, no evidence was proffered that he fled to the Dominican Republic to evade prosecution. Moreover, he voluntarily surrendered to the authorities to face prosecution when his extradition was authorized.

While the Government's motion and proffer highlighted that Mr. Vázquez-Amarante allegedly attempted to launder multimillion dollar amounts of proceeds from drug trafficking in 2021, there is no evidence that Defendant possesses access to such significant financial resources at present. If he did, he could have easily fled from the Dominican Republic. Instead, he surrendered to face prosecution in the United States when called in by the authorities.

Defendant's community ties to Puerto Rico, lack of criminal history, and voluntary surrender rebut the presumption under 18 U.S.C. § 3142(e). *See* United States v. Newton, 215 F.3d 1313 (1st Cir. 2000) (defendant's evidence of family and business ties to Puerto Rico, no prior criminal convictions, and compliance with pretrial release conditions were sufficient to rebut presumption).

> **D. The nature and seriousness of the danger to any person or the community that would be posed by Defendant's release.**

The Government did not proffer, much less present, any evidence of dangerousness. Thus, the Government did not meet its

burden to support "by clear and convincing evidence that there is no condition or set of conditions that will reasonably assure the safety of any other person or the community." 18 U.S.C. § 3142(f).

## IV.  CONCLUSION

For the foregoing reasons, Defendant Estefani Vázquez-Amarante shall be released pursuant to the Magistrate Judge's Order at Docket No. 44 and subject to the conditions therein.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 6th day of February 2026.

                                               s/Raúl M. Arias-Marxuach
                                               UNITED STATES DISTRICT JUDGE